UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
iBASIS GLOBAL, INC.,

                    Plaintiff,
        -against-                    **MEMORANDUM OF**
                                                   **DECISION AND ORDER**
DIAMOND PHONE CARD, INC., NASREEN    10-CV-5131 (ADS) (ARL)
GILANI, and SAMSUDDIN PANJWANI,

                    Defendants.
----------------------------------------------------X

**APPEARANCES:**

**Cole Schotz Meisel Forman & Leonard PA**
*Attorneys for the plaintiff*
900 Third Avenue, 16th Floor
New York, NY 10022
      By:  Jed M. Weiss, Esq.
             Michael N. Morea, Esq., Of Counsel

**Burns & Levinson, LLP**
*Attorneys for the plaintiff*
125 Summer Street
Boston, MA 02110
      By:  Michael P. Twohig, Esq.
             Shepard Davidson, Esq., Of Counsel

**Law Office of Eric Schneider, P.C.**
*Attorneys for the defendants*
P.O. Box 3936
41 Pearl Street
Kingston, N.Y. 12402
      By:  Eric Schneider, Esq., Of Counsel

**SPATT, District Judge**.

      The plaintiff, iBasis Global Inc. (the "Plaintiff" or "iBasis") commenced this action against the defendants, Diamond Phone Card, Inc. ("Diamond"), and its principals Nasreen Gilani, and Samsuddin Panjwani (collectively "the Defendants"), asserting a cause of action for breach of contract. Presently pending before the Court is the Defendants' motion pursuant to

1

Federal Rule of Civil Procedure 14(a) ("Fed. R. Civ. P. 14(a)") to implead IP Horizon, LLC, Voice Solutions, LLC d/b/a DCI Voice Solutions, STX Communications, LLC, STX II, LLC, and Diamond Prepaid Phone Cards, LLC, and for leave to file a third-party complaint against them. For the following reasons, the Court grants in part and denies in part the Defendants' motion.

## I. BACKGROUND

### A. The Parties and the Agreements

The following facts are drawn from the complaint and the version of the proposed third-party complaint that the Defendants submitted on July 13, 2011.

#### 1. The Parties

Plaintiff iBasis is a Delaware corporation with its principal place of business in Burlington, Massachusetts, whose business includes a variety of telephone related products and services, including providing international telephone call termination services. Defendant and proposed third-party plaintiff Diamond is a New York corporation, co-owned by New York residents Panjwani and Gilani. Diamond is a distributor of prepaid telephone products including calling cards.

The proposed third party defendants are: (1) IP Horizon, LLC, a limited liability company organized and existing under the laws of the State of Maryland ("IP Horizon"); (2) Voice Solutions, LLC d/b/a DCI Voice Solutions, a limited liability company organized and existing under the laws of the State of Maryland and an affiliate of IP Horizon ("DCI"); (3) STX Communications LLC, a limited liability company organized and existing under the laws of the State of New York ("STX"); (4) STX II LLC, a limited liability company organized and existing under the laws of the State of New York, which is alleged to have been formed by STX on

2

February 26, 2009 ("STX II"); and (5) Diamond Prepaid Phone Cards LLC, a limited liability company organized and existing under the laws of the State of New York, and is alleged by the Defendants to be a wholly owned subsidiary of STX and/or STX II ("Diamond Prepaid").

**2. The Service Contract**

At an unspecified time, IP Horizon and Diamond entered into a contract for the provision of telecommunications services (the "Service Contract"). iBasis describes the Service Contract as an agreement whereby IP Horizon agreed to provide "call termination services" to Diamond in exchange for payment. (Compl., ¶ 9.) By contrast, the Defendants describe the Service Contract as an agreement by IP Horizon to provide Diamond with the telecommunication network and minutes associated with "Diamond Phone" brand products. Regardless of how the Service Contract is characterized, there is no dispute that at an unspecified time, IP Horizon assigned its agreement with Diamond, including all of its accounts receivable under the Service Contract, to DCI.

The Court notes that because DCI is the predecessor-in-interest to IP Horizon, for the time period following the execution of the Service Contract, the Defendants refer to the two entities interchangeably and iBasis cites actions by "IP Horizon and/or DCI". Accordingly, for the purposes of this motion, the Court will refer to IP Horizon and DCI with respect to any facts or allegations following the execution of the Service Contract as IP Horizon/DCI.

As part of a settlement of a dispute between iBasis and DCI, DCI assigned to iBasis its right to payment by Diamond under the Service Contract, as well as its right of action against Diamond for the money owed. According to iBasis, the Defendants breached the Service Contract by failing to pay IP Horizon/DCI more than $3.4 million for the call termination services.

For their part, the Defendants contend that as part of the agreement, IP Horizon "promised to provide its telecommunications services to Diamond at fixed usage rates and without local access fees" and "further promised that it would not disable the service affiliated with prepaid calling cards that were previously sold to Diamond by IP Horizon's exclusive distributor". (TPC ¶ 14.) According to the Defendants, although IP Horizon/DCI provided services under the Service Contract, it was not at the agreed upon rates, and therefore IP Horizon/DCI breached the Service Contract. In addition, the Defendants contend that IP Horizon/DCI breached the Service Contract by failing to honor the portion of the Service Contract obligating them to continue the services affiliated with the prepaid callings cards sold to Diamond by IP Horizon's exclusive agent. Finally, the Defendants argue that IP Horizon fraudulently induced them into entering into the Service Contract by falsely representing that the rates for their services would be capped.

### 3. The Consulting Agreement

On March 10, 2009, Diamond, Gilani, and Panjwani entered into an agreement with STX II whereby STX II was to take over Diamond's day-to-day operations in New York and New Jersey, and Gilani and Panjwani would act as fulltime consultants in exchange for "twenty-five percent (25%) of the profit of the cost of the goods" and, for the first eighteen months, "a minimum compensation of twenty-five thousand ($25,000.00) Dollars per month" (the "Consulting Agreement"). (TPC ¶ 23.) In addition, the Consulting Agreement named STX II as Diamond's "exclusive agent" responsible for the collection and management of Diamond's accounts receivable and the payment of Diamond's accounts payable. After STX II paid off Diamond's accounts payable, the Defendants were entitled to recover the remaining accounts receivable.

The Defendants allege that STX II and its related entities STX and Diamond Prepaid (collectively "the STX Parties") breached the Consulting Agreement by failing to pay Gilani and Panjwani for their consulting services, and by failing to assist Diamond with the collection of Diamond's accounts receivable and the payment of its accounts payable. As a result of this alleged breach Gilani and Panjwani claim they sustained no less than $15 million in damages.

**B.  Procedural History**

On November 5, 2010, iBasis commenced this action by filing a complaint against Diamond directly for breach of contract and for money due on an account, and against Panjwani and Gilani under veil piercing and/or alter-ego theories of liability.

On December 17, 2010, the Defendants answered the complaint and asserted three counterclaims against iBasis based on IP Horizon/DCI's alleged breaches of the Service Contract and IP Horizon's alleged fraudulent inducement of the Service Contract.

On February 18, 2011, iBasis moved to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Defendants failed to allege that iBasis engaged in or participated in any of the challenged conduct underlying the breach of contract and fraud claims. Subsequently, on March 11, 2011, the parties stipulated to the dismissal of the Defendants' counterclaims.

On March 17, 2011, United States Magistrate Judge Arlene R. Lindsay entered a scheduling order, designating June 16, 2011 as the "[d]eadline for commencement of motion practice for joinder of additional parties or amendment of pleadings". (Docket Entry 23.) On June 16, 2011, the Defendants filed a motion directed to Judge Lindsay pursuant to Fed. R. Civ. P. 14(a)(1) for leave to file a third-party summons and complaint on IP Horizon and DCI. On June 17, 2011, Judge Lindsay denied the motion on the ground that the "motion should be

redirected to the District Judge". As a result, on June 21, 2011, the Defendants filed the instant motion before the Court.

In the motion filed on June 21, 2011, the Defendants only sought leave to implead and serve a third-party complaint on IP Horizon and DCI. In opposition, iBasis argued that the motion is untimely because the Defendants did not file the motion by the June 16, 2011 deadline, and because the Defendants were aware of IP Horizon and DCI's involvement in this matter from the time this action was commenced.

By way of their reply brief in support of the instant motion, the Defendants moved to implead STX, STX II, and Diamond Prepaid and submitted a revised third-party complaint asserting a breach of contract claim against the STX Parties. iBasis did not object to the Defendants' addition of new parties in its reply brief or the Defendants submission of a revised third-party complaint.

## II. DISCUSSION

### A. Standard: Federal Rule Of Civil Procedure 14(a)

Rule 14(a) governs third party practice in federal court. The rule states, in relevant part,

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 10 days after serving its original answer.

Fed.R.Civ.P. 14(a).

It is well-settled that a third-party action, also known as an impleader action, must be dependent on, or derivative of, the main claim. Bank Of India v. Trendi Sportswear, Inc., 239 F.3d 428, 438 (2d Cir. 2000). Impleading a third-party is appropriate where "the third-party defendant's liability to the third-party plaintiff [is] 'dependent upon the outcome of the main

claim' or the third-party defendant [is] 'potentially secondarily liable as a contributor to the defendant.'" Falcone v. MarineMax, Inc., 659 F. Supp. 2d 394, 402 (E.D.N.Y. 2009) (Spatt, J.) (quoting Kenneth Leventhal & Co. v. Joyner Wholesale Co., 736 F.2d 29, 31 (2d Cir. 1984)).

The traditional grounds for a third-party action are indemnification, contribution, or subrogation. Int'l Paving Sys. Inc. v. Van-Tulco, Inc., 866 F. Supp. 682, 687 (E.D.N.Y.1994); Telecom Intern. America, Ltd. v. AT & T Corp., No. 96-CV-1366, 1999 WL 777954, at *4 (S.D.N.Y. Sept. 30, 1999). Regardless of the type of claim asserted, "[t]he outcome of the third-party claim must be contingent on the outcome of the main claim". Nat'l Bank of Canada v. Artex Indus., Inc., 627 F. Supp. 610, 613 (S.D.N.Y. 1986).

"Factors relevant to determining whether to grant leave to implead a third party include: (a) whether the moving party deliberately delayed or was derelict in filing the motion; (b) whether impleading would unduly delay or complicate the trial; (c) whether impleading would prejudice the plaintiff or the third-party defendant; and (d) whether the proposed third-party complaint states a claim upon which relief can be granted." Capitol Records, Inc. v. City Hall Records, Inc., No. 07-CV-6488, 2008 WL 2811481, at *3 (S.D.N.Y. July 18, 2008).

Rule 14(a) was designed "to promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim." Hines v. Citibank, N.A., No. 96-CV-2565, 1999 WL 440616, *2 (S.D.N.Y. June 28, 1999) (citing Gross v. Hanover Ins. Co., 138 F.R.D. 53, 54 (S.D.N.Y. 1991)). "Timely motions for leave to implead non-parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." Fashion-In-Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P., No. 97-CV-340, 1999 WL 500149, *6

(S.D.N.Y. July 15, 1999) (quoting Shafarman v. Ryder Truck Rental, Inc., 100 F.R.D. 454, 459 (S.D.N.Y.1984)). "Although Rule 14(a)'s purpose is to promote judicial economy, . . . the right to implead third parties is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court." Consolidated Rail Corp. v. Metz, 115 F.R.D. 216, 218 (S.D.N.Y. 1987).

**B. As to the Motion to Implead IP Horizon and DCI as Third-Party Defendants**

The Plaintiff's sole ground for opposing the instant motion with respect to impleading IP Horizon and DCI as third-party defendants is that it is untimely. As set forth below, the Court finds that the motion is not untimely, but even if it were, the Court's interest in promoting judicial economy necessitates granting the motion.

First, the Plaintiff argues that the motion was untimely because it was filed on June 21, 2011, five days after the deadline for filing motions to join additional parties set by Judge Lindsay in the scheduling order. However, the record clearly shows that the Defendants filed their motion on June 16, 2011. The fact that the Defendants had to re-file the motion because it was inadvertently directed to Judge Lindsay rather than this Court does not render it untimely.

The Plaintiff correctly notes that there was a multiple day delay between Judge Lindsay's order and when the Defendants re-submitted the motion, and that the re-submitted motion was not identical to the original. Judge Lindsay rejected the motion on Friday, June 17, 2011, and the Defendants did not resubmit the motion until Tuesday, June 21, 2011. In addition, the June 21, 2011 motion differed from the June 16, 2011 motion insofar as the June 21, 2011 motion included: (1) a copy of the third-party complaint against IP Horizon and DCI, and (2) an affidavit from defendant Gilani, as opposed to the June 16, 2011 motion which included an affidavit from defendant Panjwani. However, the Defendants' legal arguments and basis for

seeking to implead and file a third-party complaint against IP Horizon and DCI in the two submissions were identical. Because these minor differences have no substantive impact on the Court's analysis, the Court finds that the motion was timely filed as of the June 16, 2011 deadline.

Finally, the Plaintiff contends that the motion is untimely because the Defendants knew that IP Horizon/DCI were parties to the Service Contract, and therefore could have sought to implead them sooner. However, it is evident by the Defendants' answer and counterclaims, that they interpreted the complaint to assert that the Plaintiff was the successor-in-interest to IP Horizon/DCI, as opposed to the assignee of the right to collect money owed under the Service Contract. Given the Defendants' apparent confusion over the Plaintiff's legal status, the Court does not find fault in the Defendants' failure to immediately implead IP Horizon and DCI after the complaint was filed. Moreover, subsequent to the parties' stipulation of dismissal of the Defendants' counterclaims on March 11, 2011, the parties agreed to a scheduling order setting June 16, 2011 as the deadline for seeking to implead third parties. Any claim that this three month delay, which the Plaintiff consented to, should weigh against granting the Defendants' motion, is unpersuasive.

Furthermore, even assuming the Defendants could have brought the motion prior to June 16, 2011, there is no evidence that IP Horizon or DCI will be prejudiced by allowing the Defendants to implead them at this early stage in the litigation, when no trial date has been set. In fact, even absent a third-party complaint, IP Horizon and DCI will likely be involved in discovery in this matter because the Defendants raised the breach of contract and fraud claims as affirmative defenses.

Moreover, this relatively short delay to serve a third-party complaint does not outweigh the Court's interest in judicial efficiency. The Plaintiff in this case is seeking to recover money allegedly owed by the Defendants to IP Horizon/DCI for services provided by IP Horizon/DCI under the Service Contract. The Defendants contend that they do not owe the full amount due under the Service Contract because IP Horizon/DCI either breached the Service Contract and/or fraudulently induced them to enter into it. Both the Plaintiff's claims against the Defendants, and the Defendants' claims against IP Horizon and DCI will involve the same ultimate issue, namely how much money, if any, the Defendants owe to IP Horizon/DCI, and therefore to the Plaintiff as assignee, under the Service Contract. Although the Plaintiff argues that the Defendants could maintain a separate lawsuit against IP Horizon and DCI for breach of the Service Contract and fraud, the Court finds that "[t]he common issues in the actions before this Court are so interrelated that it would be wastefully duplicative to require [the Defendants] to proceed against [IP Horizon and DCI] in a separate lawsuit." Phoenix Mut. Life Ins. Co. v. Seafarers Officers & Emps. Pension Plan, 128 F.R.D. 25, 29 (E.D.N.Y. 1989).

"The Second Circuit has stated that the purpose of Rule 14(a) is 'to avoid two actions which should be tried together to save the time and cost of a re-duplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant.'" Hicks v. Long Island R.R., 165 F.R.D. 377, 379 (S.D.N.Y. 1996) (quoting Dery v. Wyer, 265 F.2d 804, 806–07 (2d Cir. 1959)). Accordingly, the Court grants the Defendants' motion to implead IP Horizon and DCI and to serve them with a third-party complaint.

## C. As to the Motion to Implead and File a Third-Party Complaint Against STX, STX II, and Diamond Prepaid

In their reply brief in support of the motion to implead IP Horizon and DCI, the Defendants essentially interposed an entirely new motion to also implead STX, STX II, and Diamond Prepaid. Without explanation, the Defendants contend that the STX Parties are "critical" to this litigation because STX II is the "exclusive agent for the payment of Diamond's accounts payable" under the Consulting Agreement, and the Plaintiff attached a copy of Diamond's accounts payable to the complaint to support its claim for damages. (Defs.' Reply Br. at 3–4.) The Court disagrees.

As an initial matter, the Court notes that this motion was filed on July 12, 2011, almost one month after the deadline set in the scheduling order. As such, the Court must consider Fed. R. Civ. P. 16(b) ("Rule 16"), which "may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed." Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 243 (2d Cir. 2007); see Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "A party's lack of diligence and absence of good cause for such a delay" is grounds for a court to deny a motion to implead a third-party defendant as untimely. Dos Santos v. Terrance Place Realty, Inc., 433 F. Supp. 2d 326, 336 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).

The Defendants contend that the impetus for seeking to implead the STX Parties as third-party defendants was a "conversation between Plaintiff's counsel and Defendants' counsel on July 11, 2011". (Defs.' Reply Br. at 1.) The Defendants' failure to provide the substance of this conversation or any other reason that might explain their delay shows an absence of good cause for the delay and renders the instant motion with respect to the STX Parties untimely. Nevertheless, even assuming this motion was timely, the Court finds that the Defendants' claim

11

against the STX Parties does not meet the threshold requirement for impleader that the claims be "dependent on, or derivative of, the main claim", and therefore the Defendants' motion as to the STX Parties must be denied. Bank Of India v. Trendi Sportswear, Inc., 239 F.3d 428, 438 (2d Cir. 2000); Schwabach v. Memorial Sloan-Kettering Cancer Ctr., No. 99-CV-1320, 2000 WL 122203, at *3 n.4 (S.D.N.Y. Jan. 31, 2000) ("Because the Court's discretion as to whether to permit impleader 'should be exercised only when the claim is within the scope of impleader established by Rule 14(a),' Wright, Miller & Kane, Federal Practice and Procedure § 1443 (1990), the Court need not reach the issue of whether, after considering the considerable delay by the movant, and the substantial delay in and complication of the trial, the benefits of consolidation outweigh the prejudice to plaintiff and third-party defendants.").

The Defendants do not allege that the STX Parties are in some way responsible for their alleged breach of the Service Contract, nor do the Defendants assert that the STX Parties are indemnitors or joint-tortfeasors that are required to reimburse them for any damages they incur from the Plaintiff's breach of contract suit. Rather, the Defendants are seeking damages for the STX Parties' alleged failure to perform its obligations under the Consulting Agreement, separate and apart from any obligations that the Defendants had to IP Horizon/DCI under the Service Contract. The third-party complaint against the STX Parties raises questions of law and fact wholly distinct from those involved in adjudicating the Service Contract and therefore would undermine the interest in judicial economy at the heart of Rule 14. See Schwabach, 2000 WL 122203, at *2 ("The interest in judicial economy which underlies Rule 14 is clearly not advanced when the claims asserted against the third party only complicate the case by adding entirely new factual and legal issues unrelated to plaintiff's underlying claim.").

The only apparent connection between the Plaintiff's claims and the Defendants' claims against the STX Parties is that they both involve Diamond's accounts payable. However, a third-party claim "is not permissible simply because it arises out of the same nucleus of facts as the main claim." Resources Funding Corp. v. Congrecare, Inc., No. 91-CV-8163, 1994 WL 24825, *10 (S.D.N.Y. Jan. 21, 1994). Even with respect to the accounts payable, the Defendants do not allege that the STX Parties would be liable to satisfy any portion of the judgment in favor of the Plaintiff if successful. In fact, under the terms of the Consulting Agreement, STX II expressly disclaimed any liability for unsatisfied accounts payable. (Consulting Agreement 2.02(c).)

As one court so poignantly stated, "a Rule 14(a) branch cannot grow without the root of a claim asserted by plaintiff". Ez-Tixz, Inc. v. Hit-Tix, Inc., No. 93-CV-3791, 1995 WL 77589, at *4 (S.D.N.Y. Feb. 27, 1995). The STX Parties are not parties to the Service Contract underlying the main claim and neither the Plaintiff, IP Horizon, or DCI are parties to the Consulting Agreement. Thus, the Court can adjudicate the claims between the Plaintiff and the Defendants and between the Defendants and IP Horizon/DCI based on the Service Contract, without having to adjudicate the agreements involving the STX II Parties. Where, as here, "the rights and obligations between the proposed third-party defendant and the defendant in the underlying action exist independently of the rights and obligations between the parties in the original action, impleader is not proper." Schwabach, 2000 WL 122203, at *2; see also National Union Fire Ins. Co. v. Deloach, 708 F. Supp. 1371, 1387–88 (S.D.N.Y. 1989) (motion for leave to file third-party complaint denied where third-party claims were based on agreements separate from the agreements underlying the main claims and asserted independent rights and remedies).

Accordingly, the Defendants' motion to implead and file a third-party complaint against STX, STX II, and Diamond Prepaid is denied.

## III.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the Defendants' motion pursuant to Fed. R. Civ. P. 14(a) to implead IP Horizon and DCI and for leave to file a third-party complaint against them is granted, and it is further

**ORDERED,** that the Defendants' motion pursuant to Fed. R. Civ. P. 14(a) to implead STX, STX II, and Diamond Prepaid and for leave to file a third-party complaint against them is denied, and it is further

**ORDERED**, that the Defendants are directed to serve a third-party complaint on IP Horizon and DCI within 20 days of the date of this order.

**SO ORDERED.**
Dated: Central Islip, New York
October 21, 2011

                                      ___/s/ Arthur D. Spatt_____
                                        ARTHUR D. SPATT
                                        United States District Judge